## SIRSKI v. UNITED STATES.

### No. 3991.

Circuit Court of Appeals, First Circuit.

Nov. 9, 1944.

———◆———

Alfred A. Albert, of Boston, Mass., for appellant.

Thomas P. O'Connor, Asst. U. S. Atty., and Edmund J. Brandon, U. S. Atty., both of Boston, Mass., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

WOODBURY, Circuit Judge.

The defendant was indicted, tried (jury waived), and convicted for violating § 11 of the Selective Training and Service Act of 1940, 54 Stat. 894, 50 U.S.C.A.Appendix, § 311, in that he knowingly failed to report to his local draft board for assignment to work of national importance. He has taken this appeal to us from the judgment of sentence passed upon him in consequence.

The undisputed facts are that the defendant registered as required by the Selective Training and Service Act, supra, and subsequently filed his Selective Service Questionnaire in which he stated that by occupation he was a formally ordained minister of the sect known as Jehovah's Witnesses and that he customarily served as such and devoted his full time to his ministerial duties. He also stated that by reason of his religious training and belief he was conscientiously opposed to participation in war in any form and requested a special form for conscientious objectors. This form was sent him, and he filled it out and returned it. Nevertheless, in spite of his statements in the questionnaire and his corroborating statements in the form, he was put in Class I–A by his local board. On appeal, however, the board of appeal found him to be a conscientious objector and in consequence classified him in IV–E. He was duly notified by his local board of this classification and in due course he was given a final-type physical examination. As a result of this examination he was found physically and mentally fit for general military service and in regular course thereafter he was ordered to report to his local board for assignment to work of national importance. He deliberately refused to obey this order and his indictment, trial, conviction and sentence followed.

At the trial below the defendant took the position that under § 5(d) of the Act, 54 Stat. 888, 50 U.S.C.A.Appendix, § 305(d), he was entitled to exemption from any form of national service because on the facts which he had presented he was a regular or duly ordained minister of religion, and on this ground he moved for a finding of not guilty. The court below denied this motion, ruling that it could not consider as a defense to the indictment that the selective service officials had acted arbitrarily, capriciously or contrary to law in classifying the defendant and, assigning this as error, the defendant took this appeal to us.

Although the material facts of this case could accurately be summarized in almost the identical words used by the Supreme Court to summarize the facts in Falbo v. United States, 320 U.S. 549, 550, 64 S.Ct. 346, the defendant's principal argument is that the Falbo case does not support the ruling below. His argument is that the regulations governing the processing of conscientious objectors for national service have been so changed since the Falbo case was decided that by applying the reasoning of the Supreme Court in that case to the situation presented by this one the opposite result must be reached. We do not agree.

In Falbo v. United States, the Supreme Court said (see Billings v. Truesdell, 321 U.S. 542, 547, 64 S.Ct. 737) that the mobilization system which Congress established by the Act was designed to operate as a continuous process for the selection of men for national service; that it was a process in which civil and military agen-

cies performed integrated functions; that it consisted of a series of connected steps which began with registration with a civilian local board, and, proceeding through classification by civilian agencies, ended only when a registrant was finally accepted for service by the army, navy or civilian public service camp. "Thus", it said, "a board order to report is no more than a necessary intermediate step in a united and continuous process designed to raise an army speedily and efficiently" [320 U.S. 549, 64 S.Ct. 348], and then it held that Congress had not "authorized judicial review of the propriety of a board's classification in a criminal prosecution for wilful violation of an order directing a registrant to report for the last step in the selective process."

The defendant argues that under the regulations in effect when he was processed for national service, what had formerly been the last step in the administrative process of selection (final determination of physical and mental fitness) was taken at an earlier stage, i.e., when a registrant passed his pre-induction physical examination, so that when he as a conscientious objector was ordered, after he had taken that step, to report for work of national importance, all of his administrative remedies had been exhausted. In consequence he says that he is not precluded by the Falbo case from making his defense, but on the contrary under the reasoning of that case he is entitled to have it considered. The earlier regulations do not support this argument—they refute it.

The regulations as they stood at the time when Falbo was processed for national service (Parts 651 and 652) provided (Reg. 651.1) that every registrant in IV–E should be given a final-type physical examination by his local board examining physician (Reg. 651.2(b)) and only after he had been found physically fit according to the standards applicable to physical examinations conducted by the medical board at the induction stations of the armed forces (Reg. 651.21(a)) might he be ordered to report for work of national importance. Reg. 652.1. This in substance, although not in form, is the same system that was in effect when Sirski was processed under the

above Parts of the Regulations as amended on January 15, 1943. Thus it appears that before Falbo was ordered to report for work of national importance his physical fitness according to military standards had been definitely determined by a final-type physical examination given by his local board examining physician just as Sirski's physical fitness had been determined by the pre-induction physical examination which he took at the induction station under Part 651 of the Regulations as it now stands. From this we must conclude that when the court in the Falbo case said, 320 U.S. page 553, 64 S.Ct. page 348, that the connected series of steps into the national service does not end until the registrant is accepted by the civilian public service camp for the reason that the conscientious objector may be rejected there, it had in mind Regulation No. 653.11(c) which, under the heading Reception at Camps, reads: "If the assignee indicates that his physical condition has changed since his final-type physical examination for registrants in Class IV–E, the camp physician shall examine him with reference thereto. If the assignee is not accepted for work of national importance, the camp director will indicate the reason therefor, and the assignee, pending instructions from the Director of Selective Service, will be retained in the camp or hospitalized where necessary." Since this regulation remained unchanged at the time when Sirski was ordered to report, the Falbo case is directly in point and fully supports the ruling of the court below.

Other arguments advanced by the defendant in this case, and by the defendant in the case of Penley v. United States, 145 F.2d 748, decided by us today, to the effect that the Falbo case is not good law and should not be followed, that, recognizing this, we declined to follow it in Chih Chung Tung v. United States, 142 F.2d 919, and that the Falbo case was overruled sub silentio by the Supreme Court in Billings v. Truesdell, 321 U.S. 542, 64 S. Ct. 737, do not seem to us of sufficient substance to require consideration.

The judgment of the District Court is affirmed.