**SUNAL v. LARGE, Superintendent, Federal Prison Camp.**

No. 5490.

Circuit Court of Appeals, Fourth Circuit.
July 29, 1946.
Writ of Certiorari Granted Jan. 20, 1947.

Hayden C. Covington, of Brooklyn, N. Y. (Horace S. Meldahl, of Charleston, W. Va., on the brief), for appellant.

Irving S. Shapiro, Atty., Department of Justice, of Washington D. C. (Theron L. Caudle, Asst. Atty. Gen., Leslie E. Given, U. S. Atty., of Charleston, W. Va., and Robert S. Erdahl, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before GRONER, Chief Justice, U. S. Court of Appeals for the District of Columbia, SOPER, Circuit Judge, and CHESNUT, District Judge.

CHESNUT, District Judge.

The appellant in this habeas corpus case, Theodore Martin Sunal, a Jehovah's Witness, was indicted, tried and convicted in the Western District of Pennsylvania under section 11 of the Selective Training and Service Act of 1940, 54 Stat. 894; 50 U.S. C.A. Appendix, § 311, for refusing induction into the Armed Forces of the United States after reporting for induction under an order of his Local Board, and being found physically fit upon examination. At the trial of his case he offered to submit evidence which he contended would show that he was entitled to exemption from military service in that he was a minister of religion and that he had been improperly classified for military service by the Local Board. The trial court refused to admit the tendered evidence and upon his conviction by a jury he was, on March 22, 1945, sentenced to five years imprisonment. He did not appeal but shortly after the decision by the Supreme Court, February 4, 1946, in the similar cases of Estep and Smith, 66 S.Ct. 423, he filed a habeas corpus petition in the Southern District of West Virginia where he was then confined. In the petition he alleged that the judgment and sentence under which he was confined was null and void because the court lacked jurisdiction by reason of the denial of his constitutional right of due process consequent upon rejection of the evidence tendered by him. The habeas corpus court issued the writ and, after the return by respondent, held a hearing in the case, and upon consideration of the evidence offered by the

petitioner, concluded that it was legally insufficient to show an improper classification by the Local Board and thereupon remanded the petitioner who, on motion of his counsel, was admitted to bail pending appeal.

Two questions are presented on this appeal: (1) A matter of procedure, whether the remedy of habeas corpus was available to the appellant under the circumstances, and (2) if so, whether the remand of the petitioner was proper under the evidence submitted to the habeas corpus court.

■ First: Counsel for the appellee (respondent in the habeas corpus proceeding) in support of his contention that habeas corpus was not an available remedy to the petitioner, refers to the often stated principle that habeas corpus cannot be used as a substitute for an appeal or a writ of error. Ex parte Siebold, 100 U.S. 371, 375, 25 L.Ed. 717; In re Coy, 127 U.S. 731, 758, 8 S.Ct. 1263, 32 L.Ed. 274. But, as recently pointed out in Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455, and Waley v. Johnston, 316 U.S. 101, 62 S. Ct. 964, 86 L.Ed. 1302, the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ is apparent, and it is the only remedy available to the petitioner.

■ It is quite impossible to overestimate the great importance of the writ of habeas corpus as a "precious safeguard of personal liberty." Its history in English and American jurisprudence is familiar to all students of constitutional government. It was in use in England as a common law writ long prior to its firm statutory establishment by the famous Habeas Corpus Act of May 27, 1679, (31 Car. II) "for the better securing of the liberty of the subject." Ex parte Watkins, 3 Pet. 193, 7 L. Ed. 650; Blackstone Comm. Cooley's 4th Ed. Book III, c. 8. Its importance was recognized in the Federal Constitution which, in Art. I, § 9, provided "the Privilege of the Writ of Habeas Corpus shall not be

suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Ex parte Milligan, 4 Wall. 2, 18 L.Ed. 281. The authority for its issuance by federal courts and judges and the limitations thereon and the procedures therein are regulated by federal statute. 28 U.S.C.A. §§ 451–466. Section 453 confers the power to issue it in a case of this general nature, subject however to the general principles with regard to the exercise of the power established by judicial decisions.

■ Despite the general rule that habeas corpus may not be properly used as a substitute for an appeal, on its face seemingly applicable to the instant case, there are nevertheless cases where, in view of exceptional circumstances, the general rule should not be applied. We find such exceptional circumstances in the instant case in view of the recently developed doctrine of the Supreme Court relating to the "finality" of decisions of Local Boards under the Selective Service Act of 1940, 50 U.S.C.A. Appendix, § 310(a). In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, it was held by a divided court in a criminal prosecution for wilful failure to obey the Local Board's order to *report* for assignment to work of national importance, that the registrant was not entitled to show that he had been erroneously classified as a conscientious objector rather than as a minister of religion; and that, assuming the existence of a constitutional requirement that judicial review be available to test the validity of the Board's classification, Congress was not required to provide for such review prior to *final acceptance* of the registrant for service.[1] The effect of the decision in that case was very widely understood by the Bench and Bar to be that there could be no judicial review of the Board's classification until after the administrative process had been *finally completed by the induction of* the registrant into military service; but that thereafter he could obtain this review by a writ of habeas corpus addressed to his military commander.[2] In

---

[1] See also Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

[2] See Opinion of Mr. Justice Frankfurter concurring in the result of the cases of Estep and Smith, infra. With respect to the understanding by the federal judiciary of the Falbo case in relation to the finality of the decisions of

Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917, the court held that a registrant, who had reported for induction but refused to voluntarily take the oath of induction, was not lawfully subject to military discipline and was only amenable to civil law under section 11 of the Selective Service Act. But in the latest of this sequence of cases, Estep and Smith v. United States, 66 S.Ct. 423, 435, the court held that a registrant who voluntarily *reported for induction* but nevertheless *refused to take the induction oath,* had completed his administrative remedies to the end, and, when thereafter indicted for failure to voluntarily take the oath of induction, was entitled at his trial to show that his classification for military service and denial of his claim for exemption therefrom as a minister of religion, as determined by the order of his Local Board, was "beyond the jurisdiction" of the Local Board if *without foundation in fact,* and that the Board's order was therefore a nullity.

■ It is to be noted in the instant case that Sunal was sentenced in the criminal case March 22, 1945, which was more than a year *subsequent* to the decision in the Falbo case on January 3, 1944, and nearly a year *prior* to the decision in the Estep and Smith cases. It is also to be noted that the defense offered by Sunal, and rejected by the court, was substantially the same as that offered by Estep and Smith and for them held admissible. It is inferable and indeed probable that the evidence offered by Sunal was rejected by the trial judge on the supposed authority of the Falbo case. And it is a further fair inference that no appeal from the judgment and sentence was taken in the Sunal case by reason of counsel's understanding that it would be futile in view of the Falbo decision. The time for appeal in the Sunal case had expired long before the decision in the Estep and Smith cases. The inevitable result is that the only available remedy remaining to Sunal was relief by habeas corpus, if he was entitled to any relief on the merits of his case. Furthermore we think the opinion of the majority of the court in the Estep and Smith cases indicates that in such a situation habeas corpus is an appropriate remedy. Mr. Justice Douglas, speaking for the court, there said:

"But if we now hold that the registrant could not defend at his trial on the ground that the Local Board had no jurisdiction in

the Local Boards and the non-reviewability thereof in criminal cases, he said [66 S.Ct. 435]:

"Such has been the construction of more than forty judges in the circuit courts of appeals. The question raised by the facts of this case has come before the Circuit Courts of Appeals for the First, the Second, the Third, the Fourth, the Fifth, the Sixth, the Seventh and the Eighth Circuits. All eight of them, have ruled that judicial review of a draft board classification is not available, in a criminal prosecution, even though the registrant has submitted to the pre-induction physical examination. Sirski v. United States, 1 Cir., 1944, 145 F.2d 749; United States v. Flakowicz, 2 Cir., 1945, 146 F.2d 874; United States v. Estep, 3 Cir., 1945, 150 F.2d 768; Smith v. United States, 4 Cir., 1945, 148 F.2d 288; Koch v. United States, 4 Cir., 1945, 150 F.2d 762; Fletcher v. United States, 5 Cir., 1942, 129 F.2d 262; Klopp v. United States, 6 Cir., 1945, 148 F.2d 659; United States v. Rinko, 7 Cir., 1945, 147 F.2d 1; Gibson v. United States, 8 Cir., 1945, 149 F.2d 751. Such was the impact of this Court's reasoning in the Falbo case

that it greatly influenced the ruling of the Circuit Courts of Appeals as to the finality of local board orders and practically silenced whatever doubts may theretofore have been held by a few of the judges."

Mr. Justice Frankfurter also quoted from the report in January 1945 of the House Committee Military Affairs as follows:

"Under the Act as it is now written, registrants who are ordered to submit to induction into the armed forces may not refuse and defend such refusal in a criminal prosecution on the ground that their classifications were not given fair consideration by their boards. In order to obtain a judicial determination of such issues such registrants must first submit to induction and raise the issue by habeas corpus." H.R.Rep.No.36, 79th Cong. 1st Sess. (1945) 4–5.

See also note 15 to the opinion of the court in the Estep case by Mr. Justice Douglas; and United States ex rel Trainin v. Cain, 2 Cir., 144 F.2d 944; United States ex rel. Bayly v. Reckord, D.C.Md., 51 F.Supp. 507, 511.

the premises, it would seem that the way would then be open to him to challenge the position of the local board after conviction by habeas corpus. The court would then be sending men to jail today when it was apparent that they would have to be released tomorrow.

"We do not suggest that because Congress has provided one judicial remedy another should be implied. We may assume that where only one judicial remedy is provided, it normally would be deemed exclusive. *But the fact that habeas corpus after conviction is available in these cases* gives added support to our reading of § 11. It supports a rejection of a construction of the Act that requires the courts to march up the hill when it is apparent from the beginning that they will have to march down again.

"We express no opinion on the merits of the defenses which were tendered. Since the petitioners were denied the opportunity to show that their local boards exceeded their jurisdiction, a new trial must be had in each case." (Italics supplied.)

■ We think this expression of view by the court necessarily means that in a case where the proffered evidence had been rejected without consideration as to its legal effect, and the time had passed for an appeal, the convicted defendant had an available remedy in habeas corpus to challenge the alleged erroneous classification made by the Board; but in a case which was still open on appeal there should be a reversal and new trial to permit consideration of the defense prior to a verdict and thus avoid the necessity of resorting to habeas corpus after conviction.[3] Counsel for the appellee contends that this is not the clear import of the opinion and in support of that view calls attention to the case of Rea v. McDonald, 5 Cir., 153 F.2d 190, decided January 12, 1946, a few weeks prior to the decision in the Estep and Smith cases, and particularly to the denial of certiorari by the Supreme Court on March 25, 1946, 66 S.Ct. 820, a few weeks after the decision in Estep and Smith. The facts in the Rea case were like those in Estep and

Smith, and Sunal. In each case the registrant was a Jehovah's Witness, claimed full exemption from military service on the ground that he was a minister of religion, and in each case had, pursuant to the orders of the Local Board, appeared for induction but had refused to take the induction oath. In each case the same defense was tendered in the criminal case but rejected by the trial judge. After his conviction in the criminal case Rea applied for release on habeas corpus; but this was denied by the district judge and the judgment was affirmed by the 5th Circuit. In all four cases the registrant had the same leading trial counsel. It is also pointed out by the appellee in this case that in the brief for the government in response to Rea's petition for certiorari, special attention was called to that portion of the opinion in the Estep and Smith cases which has been above quoted, and government counsel in effect suggested that the court grant the writ of certiorari and reverse the judgment below if the quoted portion of the opinion in the Estep and Smith cases was of the import which we have attributed to it. The argument is then submitted that the denial of certiorari should imply that our understanding of the opinion in the Estep and Smith cases is mistaken. We have not been able to reach this conclusion in view of the repeated admonition that the denial of certiorari is not to be taken as an expression of opinion by the Supreme Court.

Second: The remaining and ultimate question is whether the remand of the appellant, as a result of the habeas corpus hearing was proper and in accordance with the federal statute (28 U.S.C.A., § 461) which reads:

"The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon dispose of the party as law and justice require."

■ The contention on behalf of Sunal is that he should have been discharged from custody without prejudice to the right to the government to re-try him on the criminal indictment in the Western District

[3] See also the concurring opinion of Mr. Justice Rutledge in Estep and Smith, and the note to his opinion.

of Pennsylvania. The theory advanced is that the judgment and sentence of the court in that case was null and void because, by the refusal of the proffered evidence the court *lost jurisdiction*. The argument runs as follows: The right to make a defense in a criminal case is a constitutional right granted by the due process clause of the 5th Amendment; that the rejection of the evidence offered constituted a denial of the right to defend and, therefore, a denial of a constitutional right which rendered the judgment void; and that habeas corpus is an appropriate remedy to release the defendant so convicted. Reference is made to the sentence in Bowen v. Johnston, supra, 306 U.S. at page 24, 59 S.Ct. 444, 83 L.Ed. 455. "But if it be found that the court had no jurisdiction to try the petitioner, or that in its proceedings his constitutional rights have been denied, the remedy of habeas corpus is available."

We think the contention untenable in its application to the particular case. It is clear that the district court for the Western District of Pennsylvania had full and complete jurisdiction to try the case. The defendant was not denied the right to defend against the particular charge that was made, which was his wilful refusal to take the induction oath. The adverse ruling on his proffered evidence was, it must now be conceded, a trial error which could and should have been corrected on appeal. But it is a misnomer to say that the trial error caused the court to lose jurisdiction in the case. It resulted in an erroneous judgment but this is far different from an absence of jurisdiction. In rejecting the proffered evidence the trial court evidently acted on its interpretation of the meaning of the "finality" of decision of the Local and Appeal Boards under the Selective Service Act, 50 U.S.C.A.Appendix § 310(a) (2) and its understanding of the decision of the Supreme Court in the Falbo case. It was called upon to construe and apply the Act. In its ruling, erroneous though it was, the court was exercising a jurisdiction which it undoubtedly had and it cannot properly be said to have "lost jurisdiction" because of the error in exercising it. Collins v. Johnston, 237 U.S. 502, 35 S.Ct. 649, 59 L.Ed. 1071; Matter of Moran, 203 U.S. 96, 105,

27 S.Ct. 25, 51 L.Ed. 105; Price v. Johnston, 9 Cir., 125 F.2d 806, 811, certiorari denied 316 U.S. 677, 62 S.Ct. 1106, 86 L.Ed. 1750; Van Meter v. Snook, 5 Cir., 15 F.2d 377; Rea v. McDonald, 5 Cir., 153 F.2d 190; Ex parte Parks, 93 U.S. 18, 23 L.Ed. 787; Ex parte Siebold, 100 U.S. 371, 375, 25 L.Ed. 717; Hans Nielsen, Petitioner, 131 U.S. 176, 184, 9 S.Ct. 672, 33 L.Ed. 118. Nor is the instant case analogous to that class of cases where, by virtue of matter dehors the record jurisdiction originally rightly acquired is destroyed by occurrences which by their own force render the trial really a nullity; as for instance (see Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969) the independence of the trial was destroyed by a mob; or as in Johnston v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, the defendant did not enjoy the benefit of counsel as required by the 6th Amendment. Indeed the error in this case was one which ordinarily could have been corrected only on appeal and not by habeas corpus save for the exceptional circumstances mentioned.

■ The appellant also contends that the judgment in the criminal trial was void because he was denied a constitutional right, when his proffered evidence was rejected. But if, as the habeas corpus judge determined, the proffered evidence when examined, was found to constitute no legal defense to the indictment, it cannot be said that the defendant was denied a constitutional right.

■ At the habeas corpus hearing counsel did not have available a transcript of the record in the criminal case. In lieu thereof they entered into a stipulation which included an exhibit to the court of Sunal's complete "cover file" before his Local and Appeal Boards. The stipulation also included the fact that the criminal trial was held before a jury in which the defendant offered testimony de novo as to his activity, background and training as a minister. But what that evidence was other than that contained in the cover file does not appear. It was further stipulated that the evidence was offered for the purpose of showing the Draft Board exceeded its authority and therefore acted illegally, and

that the evidence so offered was rejected because the trial judge in the criminal case was of the opinion that the jury could not inquire into the validity of the Draft Board proceedings and could not determine whether or not the registrant was a minister within the Act and Regulations; and that thereafter the court instructed the jury that they could not consider that question and that the only question for them to determine was whether or not the defendant unlawfully, wilfully and knowingly refused to take the induction oath as alleged in the indictment. Exceptions were made to the ruling but no appeal was taken.[4]

The trial judge in the habeas corpus case then, after considering the arguments of counsel, expressed the opinion that he should examine the file to ascertain therefrom whether the Local Board did have a basis in fact for its classification of the registrant. After that examination the trial judge made findings of fact which included the following:

"5. That the record of the petitioner before his Draft Board filed as a part of the evidence in this proceeding, contains evidence from which the Draft Boards were justified in placing the petitioner in Class 1-A as aforesaid, and denying his claim to a ministerial classification."

 Counsel for the appellant here contends that this was improper procedure because the attack on the Local Board's classification could be made only in a trial on the indictment in the criminal case, and that the question of the sufficiency of the evidence to sustain the contention of arbitrary and capricious classification by the Local Board could not properly be passed on in the habeas corpus proceeding. We hold to the contrary. The statute made it the duty of the habeas corpus trial judge to dispose of the petitioner "as law and justice require." By petitioning for the writ the appellant invoked the judgment of the judge in the habeas corpus case. He cannot now complain that the judgment was given, if it was intrinsically correct. He failed to exercise his right of appeal and thereby he lost all further right to complain except by invoking judicial judgment in habeas corpus, and even this remedy would not have been available to him save for the exceptional circumstances. His contention that he had a constitutional right to have the issue passed upon by a jury in a criminal case is untenable when it is judicially determined that the evidence offered by him raised no issue of fact and was, as a matter of law, insufficient as a legal defense. The guarantee of a jury trial by the 6th Amendment does not require the submission to the jury of evidence which can have no legal effect or consequence in the trial. It is true of course, as we now know, that the question of the sufficiency of the evidence should properly have been passed upon by the trial judge in the criminal case rather than subsequently determined by the judge in the habeas corpus proceeding. And this right could presumably have been established on appeal but was lost by the failure to take an appeal.

 There remains for final consideration the substantial question whether the

[4] We doubt the advisability of the practice followed in this case of stipulating in a habeas corpus case the contents of the transcript of record of another court. When one district court of the United States reviews on habeas corpus the judgment of another court of equal dignity, it would seem important that the reviewing court should act only on the record itself and not merely on a stipulation of counsel as to the contents of that record. It often occurs in the administration of the federal criminal correctional system that the prisoner is confined in a territorial jurisdiction far distant from the court in which he was tried. The procedure in such case is by habeas corpus. Undesirable results in judicial administration are possible to occur unless the reviewing court has the definite and clear record of the proceedings in the trial court before it, when it exercises its jurisdiction in habeas corpus to release or remand the prisoner. The review and reversal by the habeas corpus court of the trial court of equal dignity is a matter calling for great circumspection and care. And where the supposed constitutional defect in the trial is necessarily included in the record in the criminal case, it would seem that requisite care would require the production of a transcript of the record. Of course where the alleged constitutional defect is dehors the record, explicit and clear testimony should be required.

evidence submitted to the trial judge in the habeas corpus case was sufficient in law to constitute a valid defense. To determine this it is first necessary to ascertain the permissible scope of review of the Local Board's action. This is authoritatively outlined in the opinion of the court in the Estep and Smith cases.[5]

"The provision making the decisions of the local board 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant. See Goff v. United States, 4 Cir., 135 F.2d 610, 612."

See also United States ex rel. Trainin v. Cain, 2 Cir., 144 F.2d 944, certiorari denied Trainin v. Cain, 323 U.S. 795, 65 S.Ct. 439, 89 L.Ed. 635, cited with approval in the Estep opinion.

 If the result of the examination of the Local Board's file as made by the trial judge in this case is to be properly treated as a finding of fact, we would have no proper basis for rejecting it because it is not clearly erroneous.[6] But as the file is completely in writing it may be considered to present a question of law. On this latter assumption we have considered the contents of the file for the purpose of determining, within the proper scope of review, whether it presents sufficient evidence as a matter of law to show that the Local Board exceeded its jurisdiction in its classification; or, on the contrary, whether there was a basis in fact for the classification it made. We conclude that the Board did not exceed its jurisdiction in this case. The file is very voluminous. But a very condensed summary of its material parts shows the following:

Sunal registered with Local Board No. 26, Pittsburgh, Pennsylvania, and on January 15, 1941 he stated in answering his questionnaire, among other things, that his occupational activity had been that of an automotive carbureter and electrical mechanic for the past six years with an average weekly earning of $25; that he was not engaged in any other business or work and not licensed in any trade or profession. He also stated "I am not a minister of religion." He did claim exemption from military service as a conscientious objector, and in support of that claim stated that he was a Jehovah's Witness and as such rendered door to door testimony service presenting the Gospel message to those who cared to hear; but since 1934 his only occupation had been mechanical and that he had been raised from childhood as one of Jehovah's Witnesses, and as such attended the congregation of Kingdom Hall, Pittsburgh, the pastor or leader of which was Joseph Petti. On May 10, 1941 the Local Board classified him as 1-A. On May 15, 1941 Sunal for the first time claimed classification as a minister of religion as an "associate minister of the Alleghany company of Jehovah's Witnesses."

At that time he appeared before the Local Board and submitted affidavits of Petti and other individuals tending to support his claim. On July 8, 1941 he had another hearing before the Local Board which summarized his evidence then given as largely repetitive of previous statements, including the fact that he had no regular church or institution where he preached but went from house to house in the evenings to preach the doctrine of Jehovah's Witnesses and that he received no salary or remuneration from this but depended entirely upon his secular job to support himself. The Local Board had classified him as 1-A and declined to change that classification as a result of his several hearings. He appealed to his Board of Appeal on December 28, 1941, and addressed a letter to it explaining that in answering his questionnaire he had stated he was not a minister of religion because he regarded himself as a "minister of Christianity." He claimed to be an "or-

---

[5] Slip opinion, page 6.
[6] Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c.

dained minister of Christianity." With reference to the appellant's claim that he was a conscientious objector the Local Board referred the question to the Board of Appeal or Department of Justice. On January 27, 1942, the Appeal Board classified the appellant as a conscientious objector. He was subsequently ordered to report to his Local Board for work of national importance but failed to do so.

On May 19, 1942 he was convicted under the Selective Training and Service Act for that failure and sentenced to prison for two years and to pay a fine of $100. He was released from prison on December 6, 1943 and upon the expiration of his parole period he renewed to his Local Board his claim of classification as a minister of religion. He submitted no new evidence at that time. On May 19, 1944 the Local Board classified him as 1-A. He requested and received further personal hearings in which he stated that since his release he had increased the time spent in his activities as a Jehovah's Witness to approximately 5 hours a day or 150 hours a month, and that he worked for 4 hours a day as a mechanic, and had been designated a "pioneer" by the Watch Tower Bible and Tract Society and that his work as a Witness consisted of going from house to house conducting Bible studies; that he received no remuneration for it and that he had been trained for it by his parents and in Watch Tower Bible Schools. He further claimed he became an ordained minister by publicly witnessed immersion. As such an ordained minister he had the right to perform and preach funeral services, marriage ceremonies and immersion (baptismal) discourses. He submitted numerous affidavits of other Jehovah's Witnesses to the effect that they considered him a minister of religion. He apparently did not renew his claim previously made as a conscientious objector. After due consideration of the further facts the Local Board found no change in his status and classified him as 1-A. He appealed to the Board of Appeal and submitted a further letter outlining the grounds on which he contended the Local Board erred. On August 31, 1944 the Board of Appeal by vote of four to nothing classified him as 1-A. Thereafter he submitted further information cumulative of that already before the Local Board which, however, concluded that it did not warrant a reopening of the case. He thereafter appealed to the State and National Directors of Selective Service to intercede on his behalf but they declined to do so. He was ordered to report for induction on October 25, 1944. He reported but refused to submit to induction. His second criminal prosecution then resulted.

From this we find no evidence of arbitrary or capricious action in fact by the Local and Appeal Boards. All the evidence submitted by the registrant was apparently carefully considered and in our opinion there was basis in fact for the conclusion reached by the respective Boards. In substance it comes to this. Sunal was a sincere and devout member of the religious sect known as Jehovah's Witnesses. He was active in the pursuit of his faith and spent much of his time in advancing his religious beliefs by seeking to impress them on other people. But a substantial part of his time was devoted to purely secular work from which he obtained his living. He was not a pastor or minister of his congregation to which he belonged and obtained no remuneration for his religious activities. As to his alleged ministerial status, the situation was qualitatively not materially different from that of any other member of Jehovah's Witnesses although as a "pioneer" his activities were more extensive than that of some others.

The main contention of counsel for the appellant that he should have been classified as a minister of religion and that there was no factual basis for a different classification and therefore the action of the Local and Appeal Boards was arbitrary and capricious, is based on Sunal's activity as a "pioneer" among Jehovah's Witnesses. But in view of the other facts found by the Board, that contention is, in our opinion, not tenable. Section 305 of Title 50 U.S. C.A. Appendix provides—

"Regular or duly ordained ministers of religion * * * shall be exempt from training and service (but not from registration) under this Act."

Section 622.44 of the Regulations (9 F.R. 5202) provides:

"(b) A 'regular minister of religion' is a man who customarily preaches and teaches the principles of religion of a recognized church, religious sect, or religious organization of which he is a member, without having been formally ordained as a minister of religion; and who is recognized by such church, sect or organization as a minister.

"(c) A 'duly ordained minister of religion' is a man who has been ordained in accordance with the ceremonial ritual or discipline of a recognized church, religious sect or religious organization, to teach and preach its doctrines and to administer its rites and ceremonies in public worship and who customarily performs those duties."

Sunal's contention that on the basis of his "cover file" he could only properly be classed as a minister of religion is not new. Under quite similar facts the same contention has been made in many previous cases by the same counsel for Jehovah's Witnesses. It has generally been rejected by the courts. For instance, in Rase v. United States, 129 F.2d 204, 209, it was said by Circuit Judge Simons for the 6th Circuit:

"The phrase 'minister of religion' as used in the Act is to be interpreted according to the intention of the Congress, and not by the meaning attached to it by the members of any particular group. Congress undoubtedly intended to exempt such persons as stand in the same relationship to the religious organizations of which they are members, as do regularly ordained ministers of older and better known religious denominations. This is borne out by the provision for the exempting of theological or divinity students. If we understand the appellant's argument, every member of his sect is a minister of religion and so entitled to exemption. No differentiation is to be recognized between shepherd and flock or between pastor and congregants. Followed to its logical conclusion, this would mean that all of the members of any religious group which imposes upon its adherents an obligation to teach and preach its beliefs or to make converts, are exempted under the Selective Service Acts without regard to whether such activity constitutes their sole or principal vocation. It is inconceivable that it was the intention of the Congress to incorporate in the Act an exemption so broad and all-embracing. The statutory exemption must be applied in consonance with the clearly apparent purpose of the Congress, and not in response to the interpretation, placed upon it by particular religious groups or their adherents."

A similar view has even more recently been taken of the proper application of the law by the First Circuit in an opinion by Judge Dobie, Swaczyk v. United States, 156 F.2d 17; and again by District Judge Hincks in a carefully considered opinion in the District Court for Connecticut. United States ex rel. Kulick v. Kennedy, Warden, D.C., 66 F.Supp. 183.[7] Cf. United States ex rel. Hull v. Stalter, 7 Cir., 151 F.2d 633.

We conclude that the evidence submitted to the District Judge in the habeas corpus proceeding supports his conclusion that there was a basis in fact for the denial by the Local and Appeal Boards of Sunal's

[7] There are numerous other cases which have considered claims of Jehovah's Witnesses to ministerial classification somewhat similar to the facts of the instant case. See United States v. Flint, 2 Cir., 142 F. 62; United States v. Pitt, 3 Cir., 144 F.2d 169; Baxley v. United States, 4 Cir., 134 F.2d 998; Goff v. United States, 4 Cir., 135 F.2d 610; Honaker v. United States, 4 Cir., 135 F.2d 613; Buttecali v. United States, 5 Cir., 130 F.2d 172; Benesch v. Underwood, 6 Cir., 132 F.2d 430; United States v. Messersmith, 7 Cir., 138 F.2d 599; Seele v. United States, 8 Cir., 133 F.2d 1015; Crutchfield v. United States, 9 Cir., 142 F.2d 170.

In Kulick v. Kennedy, supra, both the procedural and the factual situations were very similar to that in the instant case. Judge Hincks concluded that the writ of habeas corpus was procedurally available under the circumstances; that the review of the evidence tendered and rejected in the criminal prosecution was properly to be judicially appraised by the trial judge in the habeas corpus case; and that on such appraisal it furnished no sufficient legal basis to show that there was any evidence which could properly have been submitted in the criminal prosecution that the defendant's classification was illegal.

claim for exemption as a minister of religion, and the judgment appealed from must, therefore, be

Affirmed.