## UNITED STATES ex rel. KULICK v. KENNEDY, Warden.
### No. 52, Docket 20311.

Circuit Court of Appeals, Second Circuit.
Oct. 29, 1946.

Writ of Certiorari Granted Jan. 20, 1947.

---

Hayden C. Covington, of Brooklyn, N. Y., and Carl A. Mears, of New Haven, Conn., for appellant.

Valentine J. Sacco, of Hartford, Conn., Asst. U. S. Atty., Theron L. Caudle, Asst. Atty. Gen., and Adrian W. Maher, U. S. Atty., of Bridgeport, Conn., for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Kulick appeals from an order, dismissing a writ of habeas corpus, issued to discharge him from custody under a judgment, entered upon the verdict of a jury, convicting him of failing to submit to induction into the United States Army.[1] The only issue is whether he was deprived of the defense that the induction order of the local board, affirmed by the appeal board, was invalid which had denied him exemption under § 5(d) of the Act, as a "regular or * * * ordained minister." Three questions arise: (1) Whether he may avail himself of habeas corpus at all, because he failed to appeal from the judgment; (2) if so, how far the writ can serve as a substitute for an appeal; (3) whether, if it is a sufficient substitute, he was prevented from proving as a defence that the induction order was invalid. The facts were as follows. Kulick registered for the draft on June 30, 1942, and filled out and mailed his questionnaire on December 5, 1942, which he accompanied by two documents, claiming exemption as a "regular or ordained minister" of the sect of Jehovah's Witnesses. He was ordered to report for preliminary physical examination on January 2, 1943, and was found fit; and on March 30, 1943, the local board—"Local Board No. 254"—classified him as "IA," and so advised him. Apparently the documents, which he submitted on December 5th, satisfied the board that he was entitled to the exemption, for on May 5, 1943, they wrote him that he had been so classified. Nothing happened to disturb this for over a year; but on August 23, 1944, the board received a telephone message from a Mrs. Greenbaum, who was connected in some way with another local board—"Local Board 255"—that "a mother of three sons in service was at Board 255 raising quite a fuss because this boy is *not* in service. According to this neighbor Kulick spends most of his time around the house when he isn't posing (at times in uniform) earning $40 an hour." On the same day, undoubtedly because of this information, the local board reclassified Kulick as "IA," and so wrote him; and this it followed on August 25 by an order directing him to report for a "pre-induction" physical examination on September 11th. On the 26th he replied by a letter, again claiming exemption under § 5(d), and asking for a hearing, which the board gave him on the 30th. At that time he submitted an affidavit and a written statement, asserting that he was a "regular or ordained minister" of Jehovah's Witnesses; and he testified at length. (There was no stenographer present, and the only record of what he said is his own testimony at the trial and that of one member of the board whom he then called.) At the conclusion of the hearing the board again voted to retain him in "IA" and so informed him on the 31st.

He reported for his "pre-induction" physical examination on September 11th, as ordered, and was again found physically fit. He appealed to the appeal board on or about September 16th, which on September 28th affirmed the order of the local board. He must have learned of the affirmance before October 8th, for on that day he asked for another hearing by the local board, which was granted. He appeared on the 11th, but there is no record of what took place except that his classification was not disturbed. On October 16th, he wrote to the Director of Selective Service, asking him to appeal to the President; but, as the Director did not do so, the local board ordered him to report for induction on November 9th; and on that day he did appear at the induction center, but refused to take the oath. The trial upon the indictment for so refusing, came on in the Southern District of New York on May, 1945, and the judge, acting in con-

---

[1] § 311, Title 50, Appendix, U.S.C.A.

formity with the rule laid down in Falbo v. United States,[2] left no question to the jury except whether Kulick had refused to be inducted; although during the trial he did, somewhat inconsistently, allow some testimony to be admitted, bearing upon the hearings before the local board. However, he ruled out many questions which would have been material, if the validity of the board's order had been an issue, and prevented a proper development of the defence, if it was one. Kulick was sentenced on May 7, 1945, and never appealed. The petition for the writ now at bar was filed on February 27, 1946, while Kulick was serving his sentence in Danbury, Connecticut.

On February 4, 1946, the Supreme Court handed down its decision in Estep v. United States,[3] which held that those drafted, after exhausting their administrative remedies, might challenge the validity of the Board's order inducting them into the Army, upon a trial for violating § 311. Until then it had been generally supposed that the earlier decision in Falbo v. United States,[4] supra, forbad this, and that upon such a trial the invalidity of the induction order was not in issue. Although Billings v. Truesdell,[5] had held that those who refused to be inducted were not subject to court martial, nothing more followed from this than that the civil courts alone had jurisdiction to decide who were members of the armed forces; those who resisted induction still remained subject to prosecution under § 311, without defence that their induction had been illegal. During this period we twice affirmed convictions in which any inquiry into the validity of the induction had been refused, and many other circuits ruled the same way.[6] The Supreme Court denied certiorari to our decision in United States v. Flakowicz,

supra,[7] on April 30, 1945;[8] and although, when Estep v. United States, supra,[9] was in the circuit court of appeals, two of the six judges (Biggs and Leahy, JJ.,) dissented, that was in July, 1945;[10] and Kulick's time to appeal from his conviction had expired on May 12, 1945.

The first question is whether the situation between May 7, 1945, when Kulick was convicted, and May 12th, when his time to appeal had expired, made any appeal so obviously fruitless as to excuse taking one; and whether, if it did, that opened the road after February 6, 1946, to a review of his conviction by habeas corpus. The district judge in the case at bar thought it did, and we agree. We shall not discuss at length the occasions which will justify resort to the writ, where the objection has been open on appeal. After a somewhat extensive review of the authorities twenty-four years ago,[11] I concluded that the law was in great confusion; and the decisions since then have scarcely tended to sharpen the lines. We can find no more definite rule than that the writ is available, not only to determine points of jurisdiction, stricti juris, and constitutional questions; but whenever else resort to it is necessary to prevent a complete miscarriage of justice. The occasion at bar is such; certainly the reasons for allowing it are more compelling than were those in Bowen v. Johnston,[12] where there merely appeared "to be uncertainty and confusion * * * whether offenses within" a national park "are triable in the state or federal courts." It would pass all fair demands upon Kulick's diligence to conclude him because of his failure to appeal. Not only had there not been any glimmer of a positive chance of success, but there had been an unusual consensus of judicial opinion against it

[2] 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.
[3] 327 U.S. 114, 66 S.Ct. 423.
[4] 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.
[5] 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917.
[6] Some twenty other decisions are collected in Justice Frankfurter's opinion in Estep v. United States, supra, 327 U.S. 114, at page 139 of 66 S.Ct. 423.
[7] 2 Cir., 146 F.2d 874.
[8] 325 U.S. 851, 65 S.Ct. 1086, 89 L.Ed. 1971.
[9] 327 U.S. 114, 66 S.Ct. 423.
[10] 3 Cir., 150 F.2d 768.
[11] Ex parte Craig, 2 Cir., 282 F. 138, 141, 155–159.
[12] 306 U.S. 19, 59 S.Ct. 442, 446, 83 L.Ed. 455.

in the lower courts. Moreover, although a number of the decisions could be explained upon the ground that those inducted had not wholly exhausted their administrative remedies;[13] in a number of others they had done so; and no distinction had been established between the two. Indeed, in United States v. Flakowicz, supra,[14] which had been one of these, the Supreme Court denied certiorari only a fortnight before May 12th. While that court has said over and over again that such denials are not to be taken as affirmances, it was not to be expected on May 12, 1945, that the court would grant a writ in precisely the same circumstances in which it had just denied one. Our reasoning so far has the support of the Fourth Circuit in Sunal v. Large.[15] As for Rea v. McDonald,[16] it was decided on January 12, 1946, at which time there was no ground for allowing a writ, for Falbo v. United States, supra,[17] was still regarded as controlling. Nor does it trouble us that certiorari in that case was denied after Estep v. United States, supra,[18] had been decided. Perhaps after February 6, 1946, Rea could have shown as an excuse for a new writ that he had been misled; but at the time he sued out the writ which he did sue out, there was no such excuse. We hold therefore that the district judge had jurisdiction to entertain the writ, and the next question is how far it may search the record in the criminal trial.[19]

■ The books are indeed full of statements that habeas corpus goes only to the jurisdiction of the court, or at least to matters fundamental to the exercise of its power like the constitutionality of a statute; and that it can never be used as a substitute for an appeal. The Fourth Circuit in Sunal v. Large, supra,[20] thought this limitation applicable to the situation before it, which was the same as that at bar. It did indeed examine the record before the local board to see whether there was substantial evidence to support the finding; but, having found that there was, it refused to go further; and we are not altogether clear why it thought that it could go even so far as it did. In any event it appears to us that if the writ is to be allowed at all, it must extend to whether the accused was denied the right to establish, by any evidence available to him, that the induction order was invalid. He may do this, either because from all the evidence before the board, recorded or not, there appeared to be no basis for its decision; or because the board for any reason had denied him a fair hearing. As we understand it, at his trial he may call the members of the board and may himself take the stand; he may testify to what he told them, and he may cross-examine them as to their motives, and in general as to the basis of their finding. In conclusion he may ask the jury to say whether, in the light of all that they have heard, it is not plain that the board did deny him a fair hearing, and did not try to classify him as he deserved. If he can satisfy even a single juror that this is true (conceivably, even if he can arouse in the juror's mind a doubt about it), he will succeed. So far as appears, in Sunal v. Large, supra,[21] the court did not mean to say that the issue was not as broad as we have just described it; and possibly the record of Sunal's trial disclosed nothing more than an offer of the written record before the local board. If so, we should agree that, if that record showed sufficient evidence to support the classification, and no basis for suspecting bias or prejudice, its exclusion was not an error. Be that as it may, in the case at bar that was not the sum of what Kulick showed, and tried to show, and incidentally, as we have said, the record before the board did not preserve any testimony there taken. Surely it can never be tenable to make critical what chances to be preserved in that record. Evidence is no

---

[13] United States v. Nelson, 2 Cir., 143 F.2d 584.

[14] 2 Cir., 146 F.2d 874.

[15] 157 F.2d 165.

[16] 5 Cir., 153 F.2d 190.

[17] 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.

[18] 327 U.S. 114, 66 S.Ct. 423.

[19] Callan v. Wilson, 127 U.S. 540, 8 S. Ct. 1301, 32 L.Ed. 223.

[20] 157 F.2d 165.

[21] 4 Cir., 157 F.2d 165.

less evidence because it is not recorded; and anything which in fact tends to establish that the accused did not have a fair hearing must be available in support of his defence, from whatever source it comes. Therefore, it seems to us that, if the writ is to go at all, it must search the record at the trial without reserve, at least so far as to enable the habeas corpus court to decide from all the evidence which was before the board, whatever its form, whether the order was valid. We submit that it would be absurd at once to say that the accused may use the writ, and yet so to circumscribe its office that he cannot redress the wrong, whose assumed existence is the only reason for not confining him to an appeal. To that extent we hold that habeas corpus is the full substitute.

The last question is whether, in the light of what we have just said, there is ground for a reversal of the conviction. Even without considering the rulings at the trial which shut out the full development of the defence, enough got in to support at least a plausible argument that a verdict should have been taken. The board had originally granted the exemption, and had left it undisturbed for over a year; and the jury could scarcely have failed to conclude that it was the communication from "Local Board 255" which caused the change. That communication was in two parts: first, it spoke of the "fuss" made by the angry mother of three sons; second, it

contained a statement about Kulick himself; and it was by no means inevitable that the first might not have had, not necessarily a controlling, but at least a contributing, part in the change of classification. Furthermore, Kulick apparently persuaded the board at the August hearing that he regularly preached five hours a day; and there was strong reason for saying that that made him a "regular minister" within the extremely latitudinarian interpretation which "Opinion No. 14" put upon the term, "regular minister," when applied to Jehovah's Witnesses.[22] However, we will not say that, standing alone, this did make a case for a verdict; for it did not stand alone. One cannot read the record at the trial without being at once persuaded that the judge circumscribed Kulick in proving his defence, defined as we have defined it. It was inevitable that he should have done so as he understood the law; indeed, the surprising thing is that he should have allowed as much to go in as he did.

For the foregoing reasons we hold that the judgment must be reversed, and Kulick must be discharged from custody. That, however, need not end the prosecution, as would be true, if the writ went merely to the jurisdiction of the court, or to the constitutionality of the statute. The indictment will remain open to any further action which the prosecution may choose to take.

Order reversed; relator discharged.

[22] "Whether or not they stand in the same relationship as regular or duly ordained ministers in other religions must be determined in each individual case by the local board, based upon whether or not they devote their lives in the furtherance of the beliefs of Jehovah's Witnesses, whether or not they perform functions which one normally performed by regular or duly ordained ministers of other religions, and finally, whether or not they are regarded by other Jehovah's Witnesses in the same manner in which regular or duly ordained ministers of other religions are ordinarily regarded."