[Crim. No. 7147. In Bank. Apr. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LAWRENCE AKIN JACKSON, Defendant and Appellant.

Allan Brotsky, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—Defendant, who was indicted for the murder of Doris Keyes, entered pleas of not guilty and not guilty by reason of insanity. The jury found him guilty of murder of the first degree. He withdrew his plea of not

guilty by reason of insanity, and, upon the trial of the penalty issue, his punishment was fixed at death. His motion for a new trial was denied, and the appeal is before us automatically under subdivision (b) of section 1239 of the Penal Code.

The evidence is clearly sufficient to sustain the finding of guilt, and defendant makes no claim of error with respect to that issue. His contentions relate to asserted errors occurring during the penalty trial.

Mrs. Keyes, who lived alone in an apartment in Hollywood, was seen alive and well on the afternoon of September 14, 1961. Two days later her body was found in a dead-end canyon in Cherry Valley near Beaumont. Her skirt was pulled up over her hips, and her underclothing was ripped. A stocking was wrapped tightly around her throat. There was blood on her body and clothing, her skull was fractured, and one of her fingers and several fingernails were broken. A pathologist who performed the autopsy was of the opinion that death was due mainly to a hemorrhage in the head resulting from a physical injury. He was also of the opinion that Mrs. Keyes had been subjected to sexual intercourse by force when she was dead or almost dead.

Defendant was taken into custody near Cherry Valley Canyon at 4 a.m. on September 17 by police who had been watching the area. There were scratches on his face, and his right hand was swollen and cut. Later, upon being questioned by the sheriff, defendant said that after reading an advertisement which Mrs. Keyes had placed in a newspaper for a secretarial job, he telephoned her and said he was in the construction business in the Beaumont-Cherry Valley area and needed a secretary. He said he made an appointment to see her and on September 15 drove her to Cherry Valley, where he got out of the car, made a ''grab'' for her throat, and then ''blacked out.'' He told his mother and aunt when they visited him after his arrest that he had killed a woman near Beaumont on September 15 and had returned to the area on September 17 to see if it ''really did happen.''

Defendant grew up in an unhealthy emotional environment. His parents were divorced when he was very young, and he subsequently lived with his aunt and uncle except for short periods when he stayed with his mother. A doctor

testified that he gave defendant a neuropsychiatric examination in October 1961 and concluded that there was no evidence of mental disease or psychosis present but that defendant revealed a pattern of sexual psychopathy since late adolescence.

It was shown that defendant had served two prison sentences, one imposed in 1946 for assault with intent to commit great bodily harm and one imposed in 1952 for conduct which was in a number of respects similar to that involved here. With regard to the latter offense he testified in the present case that he had contacted a Mrs. Minor through an employment agency and represented that he was a construction worker and needed an assistant, that he "took her out for the purpose of sex" and put his arm around her neck when she resisted his advances, that she lost consciousness for a brief time, and that he attempted to rape her and left her on the edge of a river bed. He served nearly nine years for that offense and while in prison participated in group counseling and group psychotherapy. He was released only a few days before he killed Mrs. Keyes.

Defendant testified that on several other occasions he contacted women through newspaper advertisements or employment agencies concerning nonexistent jobs because he wanted to meet girls "for sexual purposes." One of these women testified that after she had placed a newspaper advertisement for a secretarial position defendant telephoned her and said he was in the construction business. He met her with a car and drove to an isolated area, and after he struck and choked her she consented to have sexual intercourse with him. There was also evidence that in three other instances defendant, by pressing his hands around their throats, forced girls to have sexual intercourse with him.

The jury was instructed, among other things, that it could consider the consequences of the two possible sentences (death or life imprisonment) in determining the punishment defendant should receive, that a prisoner twice convicted of a felony could be pardoned or have his sentence reduced by the Governor if a majority of the Supreme Court so recommended, and that a prisoner serving a life sentence could be paroled but not until he served at least seven years. The direction concerning the possibility of parole was not qualified by reference to matters as to which there was uncontradicted testimony, namely, that under the policy of

the Adult Authority, a person convicted of first degree murder who had two prior convictions of felonies of a violent nature would be required to serve at least ten years and that the average time served by persons paroled after convictions of first degree murder was about 12 years.

The giving of an instruction as to the possibility of parole after service of the statutory minimum period of seven years (Pen. Code, §3046) has been held proper where there was no evidence as to Adult Authority practices. (*People v. Friend*, 47 Cal.2d 749, 754-755 [306 P.2d 463].) The instruction has also been upheld where there was such evidence and the court instructed the jury as to both the statutory minimum and the practices of the Authority. (*People v. Love*, 56 Cal.2d 720, 726-727 [16 Cal.Rptr. 777, 17 Cal. Rptr. 481, 366 P.2d 33, 809].) No case has been found which would support the giving of the statutory-minimum instruction without qualification where, as here, there is evidence of Adult Authority policies and practices under which a convict would serve more than that minimum.

■ It was error to instruct as to the possibility of parole without a qualification based on the practices of the Adult Authority. However, the principal consideration with respect to parole was not whether defendant might be released in seven years as distinguished from 10 or 12 years but whether in the event of a life sentence defendant would at any time become eligible for parole. In arguing to the jury defense counsel did not rely on the difference between seven years on the one hand and 10 or 12 years on the other but urged that, in view of the crimes committed, defendant would never be paroled if he were given a life sentence. Moreover, the jury was instructed that in fixing the penalty it was under a duty to consider all the evidence. Accordingly, there is no reasonable likelihood that the instruction as to the possibility of parole without an appropriate qualification prejudiced defendant. (Cf. *People v. Reese*, 47 Cal.2d 112, 117-119 [301 P.2d 582] [holding that an error in instruction of one or two years as to the minimum period of imprisonment before eligibility for parole was not prejudicial].)

Defendant also contends that the court erred in failing to instruct *on its own motion* that if he were sentenced to life imprisonment he could be subject to proceedings to declare him a sexual psychopath and thereafter be confined until a court determined that he was no longer a men-

ace to others. He argues that the jury is entitled to know all the consequences of the imposition of the two penalties and that the jury might not have imposed the death penalty had it known that if he were sentenced to life imprisonment he could be committed as a sexual psychopath and confined as such until a court, rather than the Adult Authority, was convinced he was no longer a menace.

In criminal cases the court has the duty of giving, on its own motion, instructions on the pertinent general principles of law where they are not proposed by the parties. There is no duty, however, to give instructions upon specific points developed through the evidence introduced at trial unless such instructions are requested by a party or are necessary for the jury to be fully and fairly charged upon the relevant law. (*People* v. *Warren,* 16 Cal.2d 103, 116-117 [104 P.2d 1024]. In accord: *People* v. *Bevins,* 54 Cal.2d 71, 77 [4 Cal.Rptr. 504, 351 P.2d 776]; *People* v. *Wade,* 53 Cal. 2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Turville,* 51 Cal.2d 620, 633 [335 P.2d 678]; *People* v. *Klor,* 32 Cal.2d 658, 662 [197 P.2d 705]; *People* v. *Bender,* 27 Cal.2d 164, 174-177 [163 P.2d 8]; *People* v. *Putnam,* 20 Cal.2d 885, 888 et seq. [129 P.2d 367]; see *People* v. *Manzo,* 9 Cal.2d 594, 598-599 [72 P.2d 119].) The court in *People* v. *Wade, supra,* 53 Cal.2d at p. 334, stated that the phrase "general principles of law governing the case" would seem to refer to "those principles of law commonly or closely and openly connected with the facts of the case before the court." (See also *People* v. *Bevins, supra,* 54 Cal.2d at p. 77.)

When a person is convicted of a criminal offense and there is probable cause for believing him to be a sexual psychopath, the trial judge upon his own motion or the motion of the prosecutor or upon application on behalf of the defendant may certify the defendant for examination and hearing to determine whether he is a sexual psychopath. (Welf. & Inst. Code, § 5501.) This provision, however, "shall not apply to any person convicted of an offense the punishment for which may be death until after a sentence other than death has been imposed, . . ." (Welf. & Inst. Code, § 5500.5.) Certification for a hearing is ordinarily discretionary, although it has been held that there must be a hearing where there is an uncontradicted showing by affidavit that the accused falls within the statutory definition of a sexual psychopath. (*People* v. *Barnett,* 27 Cal.2d 649, 656-657 [166 P.2d 4].)

At the trial defendant relied on the evidence regarding sexual psychopathy as showing only a mitigating circumstance and did not claim that he would be subject to sexual psychopathy proceedings if life imprisonment were imposed. Under these circumstances we cannot properly hold that the principles of law relating to confinement of sexual psychopaths were so "commonly or closely and openly connected with the facts of the case" that the trial court was required on its own motion to give instructions on the subject.

Defendant contends that the prosecutor was guilty of prejudicial misconduct in his argument to the jury. There were three men on the jury, and the prosecutor argued that if those jurors (naming them) had arrived at the scene of the crime as it was being committed, they would have killed the defendant to prevent it. He stated, "You would have taken [defendant's] life on the spot, not waiting for a judge and jury to handle matters. To protect Mrs. Keyes under those kind of circumstances any red-blooded American would have done it." He added, "And now we are asked to be squeamish about doing it legally." The prosecutor was guilty of misconduct in making this argument, but there was no objection. Had one been made, the court could easily have removed any harmful effect of the remarks by instructing the jury to disregard them.

A number of other remarks of the prosecutor in his argument to the jury are cited as misconduct, but, again, no objection to them was made at the trial. We have examined the statements complained of and are satisfied that the prosecutor was in part attempting to respond to arguments by defense counsel and that the statements were all of such a type that, had defendant objected, any impropriety could have been cured by appropriate directions to the jury.

The judgment and the order denying a new trial are affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Appellant's petition for a rehearing was denied May 1, 1963.