[Crim. No. 7704.   In Bank.   July 6, 1964.]

In re LAWRENCE AKIN JACKSON on Habeas Corpus.

Allan Brotsky and Henry M. Elson for Petitioner.

Earl Klein as Amicus Curiae on behalf of Petitioner.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., Robert R. Granucci and Henry B. Lasky, Deputy Attorneys General, for Respondent.

TOBRINER, J.—The single question that we must answer here is whether a writ of habeas corpus properly enables us to review the sentence of death pronounced against petitioner after a penalty trial embracing the errors described in *People v. Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33], and which resulted in the prejudice found in *People v. Hines* (1964) *ante*, p. 164 [37 Cal.Rptr. 622, 390 P.2d 398]. For the reasons hereinafter stated we have concluded that the writ should be granted to provide petitioner with a new penalty trial.

The jury found petitioner guilty of a rape-murder. The

evidence showed that petitioner previously had served two prison sentences, one imposed in 1946 for assault with intent to commit great bodily harm, and one rendered in 1952 for attempted rape. Petitioner, who served almost nine years for the latter offense, participated while in prison in various counselling and psychotherapy programs. Some few days after his release on parole from the latter sentence he committed the murder. We affirmed the conviction and sentence on appeal. (*People* v. *Jackson* (1963) [Crim. No. 7147] 59 Cal.2d 375 [29 Cal.Rptr. 505, 379 P.2d 937].)

The record of the penalty trial unquestionably discloses the errors that we described in *Morse*: the improper admission of evidence, the erroneous argument of counsel, the incorrect instruction of the trial court as to the possible grant of parole by the Adult Authority, and the additional erroneous argument and instruction as to the possible reduction of the death penalty by the trial judge and the Governor.

Specifically, the trial court instructed the jury that it could consider the possibility of parole in the event of a life sentence; the prosecutor argued that only a small number of those sentenced to life imprisonment remained in prison for their natural lives. The prosecutor also introduced testimony which disclosed "the average time" served by those released on parole who were serving life sentences. The deputy district attorney further contended the defendant "fooled" the Adult Authority "once by being a model prisoner," and that there was no reason "not to believe ten, twelve or fifteen years from now" he would "be able to fool them again." He later urged, "I don't think anyone of you want to share in turning this man loose on the streets in seven years, ten years, fifteen years, or twenty years. This is a responsibility I won't take and I am sure none of you ladies and gentlemen on this jury want to accept that responsibility. . . . [A]ny other verdict except the extreme penalty . . . would place sometime in the future some unknown woman at your hands on a time table of death."

The prosecutor further argued that the jury's verdict was not "the final say-so as the judge will instruct you. . . . The next thing in this matter is under the control of Judge Waite . . . he must review it in his mind. . . . [T]he Justices of the Supreme Court, the Governor may commute Mr. Jackson's sentence to life imprisonment." The court told the jury of the possible reduction of the death penalty by the trial judge and the Governor.

Petitioner's penalty trial, although it contained such errors, was affirmed upon appeal; in *Morse,* however, we expressly overruled those portions of the opinion dealing with the possibility of parole[1] and the Governor's power of commutation.[2] If, in a case subsequent to *Morse* such errors were brought to us by appeal, they would obviously compel reversal. (*People* v. *Hines* (1964) *ante,* p. 164 [37 Cal.Rptr. 622, 390 P.2d 398].) But petitioner has exhausted his appellate review. He comes to us for a writ of habeas corpus.

Historically the function of the writ has been hugely expanded. ■ Its original limited purpose of releasing a person imprisoned or restrained as a result of a void proceeding or jurisdictional defect in the imprisoning authority (e.g., *Ex parte Long* (1896) 114 Cal. 159 [45 P. 1057]; *Ex parte Max* (1872) 44 Cal. 579) has been extended to review the constitutionality of statutes (*In re Bell* (1942) 19 Cal.2d 488, 495 [122 P.2d 22]) as well as trial procedure (*In re Harris* (1961) 56 Cal.2d 879 [16 Cal.Rptr. 889, 366 P.2d 305]; *In re Newbern* (1960) 53 Cal.2d 786, 791-792 [3 Cal. Rptr. 364, 350 P.2d 116]). Nor have the decisions confined the review to the face of the trial court proceedings; such reexamination has embraced the entire course of the proceedings, including additional evidence taken either directly or under an order of reference. (*In re Seeley* (1946) 29 Cal. 2d 294, 297 [176 P.2d 24]; *In re Connor* (1940) 16 Cal.2d 701, 712 [108 P.2d 10].) ■ The cases do not limit the writ to the procurement of the release of one wrongfully imprisoned but enlarge its scope to the protection of the rights of prisoners while incarcerated. (*In re Riddle* (1962) 57 Cal. 2d 848, 851 [22 Cal.Rptr. 472, 372 P.2d 304]; *In re Ferguson* (1961) 55 Cal.2d 663, 669 [12 Cal.Rptr. 753, 361 P.2d 417].)

The decisions have thus broadened the compass of the writ not by an expansion of the concept of jurisdiction but by a proliferation of its availability in situations in which the trial court in a strict sense could exercise "jurisdiction." (See *In re McInturff* (1951) 37 Cal.2d 876, 880 [236 P.2d 574]; *In re McVickers* (1946) 29 Cal.2d 264, 270 [176 P.2d 40]; Granucci, *Review of Criminal Convictions by Habeas Corpus in California* (1962) 15 Hastings L.J. 189, 198.)

In this manner the courts have used the writ to reach such

---

[1]*Morse* also overruled other cases on this point which had been decided within a previous period of about 12 years. (*People* v. *Morse, supra,* at pp. 637-638, n. 2.)

[2]*People* v. *Morse, supra,* at p. 639, n. 5.

matters as an adjudication of habitual criminality (*In re McVickers, supra,* at p. 274; *In re Seeley, supra,* at p. 303;[3] *In re Rosencrantz* (1931) 211 Cal. 749, 751 [297 P. 15]); a prisoner's right to apply for relief from default in perfecting an appeal (*In re Martin* (1962) 58 Cal.2d 133, 141 [23 Cal.Rptr. 167, 373 P.2d 103]; *In re Gonsalves* (1957) 48 Cal.2d 638, 642 [311 P.2d 483]; *In re Byrnes* (1945) 26 Cal.2d 824, 828 [161 P.2d 376]); the erroneous imposition of an excessive sentence (*In re Morck* (1919) 180 Cal. 384 [181 P. 657]); the improper rendition of multiple sentences (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839]); an erroneous conviction under an inapplicable statute (*In re Zerbe* (1964) 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182]); an incorrect conviction under a complaint not charging a public offense (*In re Allen* (1962) 59 Cal.2d 5, 6 [27 Cal.Rptr. 168, 377 P.2d 280]).

Finally, the decisions have many times stated that the writ may be granted under exceptional circumstances to review a matter that cannot otherwise be reached and to present a question of law that is sufficiently important to justify this extraordinary remedy. In *In re Bell, supra,* at page 493, we quoted approvingly from *Bowen* v. *Johnston* (1939) 306 U.S. 19, 26-27 [59 S.Ct. 442, 83 L.Ed. 455, 461], that "It must never be forgotten that the writ of *habeas corpus* is the precious safeguard of personal liberty and there is no higher

---

[3]These cases have recognized that a lesser degree of finality attaches to the adjudication of penalty than the judgment of conviction. Thus Justice Schauer, speaking for the court in *In re McVickers, supra,* said:

". . . The judgment of conviction, as such, retains full finality but the matter of length of terms of imprisonment and other elements of the penological process relating to punishment, rehabilitation, supervision, etc., are being largely severed from direct, specific, or final control by the judgment of conviction. It seems, therefore, that, if we are not by established procedural law precluded, *it will be more in harmony with the spirit and purpose of our substantive criminal law as it is intended to operate after conviction, to regard an adjudication of habitual criminality as having somewhat less finality and sanctity than a judgment of conviction.* It will likewise be more in harmony with the policy of law if we can entertain petitioner's application on its merits rather than dismiss it on technical grounds." (Italics added.) (P. 272.) In the *Seeley* case, Justice Shenk summarized the rule enunciated in *McVickers* as follows: ". . . In that case it was held that an adjudication of habitual criminal status is not a judgment of conviction but is, in effect, only an ancillary and severable determination of a fact pertinent to the length of imprisonment and right to parole, and hence that such determination is not necessarily characterized by the high degree of finality of a judgment of conviction. . . ." (P. 299.)

duty than to maintain it unimpaired. . . . The rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'' We further stated, at page 494, that ''There are other situations in which habeas corpus is used, not as a test of jurisdiction, but to review a question of law that cannot otherwise be raised or is so important as to render the ordinary procedure inadequate.''

Likewise, we said in *In re Byrnes, supra,* at page 827, that ''It is well settled that a writ of habeas corpus ordinarily may not be employed as a substitute for an appeal . . . yet the scope of inquiry in such proceedings has been broadened rather than narrowed . . . and the writ may be used to present questions of law that cannot otherwise be reviewed or are so important as to justify an extraordinary remedy. . . .'' (See *In re McVickers, supra,* at p. 273.) In *In re Seeley, supra,* at page 296, we stated that ''It is the general rule that the writ may not be used to correct error. . . . But in exceptional cases it may be issued even though other remedies might have been available.'' The court in *In re Silverstein* (1942) 52 Cal.App.2d 725, 727 [126 P.2d 962], held that the ''writ may be resorted to in order to afford a review of a question of law that cannot otherwise be raised, or where because of the importance of the issue involved, ordinary procedure would prove inadequate.''

This case presents an exceptional situation. The punishment of death has been decreed for petitioner upon the basis of a trial which, within one year of the disposition of his appeal, has been held by this court in a comparable case to contain the vice of prejudicial error. Since petitioner has exhausted his remedy by appeal to this court, his sole hope lies in the writ. Unless we grant the review, the fortuity of time alone will seal the sentence of death, which, if petitioner's trial had occurred later, might never have been uttered. These exceptional circumstances demonstrate and justify the use of the writ in this case.

The application of the writ meets no obstacle here in the form of limiting factors set forth in prior cases. We need not redetermine facts found at the trial. (See *In re Zerbe, supra,* at p. 668; *Neal* v. *State of California, supra,* at p. 17.) We deal in an issue of law only; *People* v. *Hines, supra,* has designated the error as prejudicial. Nor do we question the conviction and guilt; we test only the sentence rendered in the penalty trial. (See *In re McVickers, supra,* at p. 270.)

We do not engage in the kind of rescue operation in which a petitioner asks a court to issue the writ to salvage an effective point which he missed or waived. Defendant did present some of the errors described in *Morse* upon appeal; this court, then, in the current state of the law, rejected them; the other errors in petitioner's trial, now so recognized in *Morse*, could not have been successfully urged at the time of his appeal. Thus, petitioner does not seek the writ to present matters which could have been, but were not, raised upon appeal.[4] (Cf. Bender, *The Retroactive Effect of an Over-ruling Constitutional Decision: Mapp* v. *Ohio* (1962) 110 U.Pa.L.Rev. 650, 657.)

■ Having approved review here by habeas corpus, we believe that petitioner merits redetermination of the penalty

---

[4] In *United States* ex rel. *Kulick* v. *Kennedy* (2d Cir. 1946) 157 F.2d 811, the trial court, refusing to allow defendant to establish a certain proffered defense, convicted him of failure to submit to induction in the army. Defendant did not appeal. Nine months after the elapse of his time for such appeal, the United States Supreme Court in another case upheld the propriety of the asserted defense. Defendant petitioned for habeas corpus; the Court of Appeals granted it; Judge Learned Hand stated: ''We can find no more definite rule than that the writ is available, not only to determine points of jurisdiction, stricti juris, and constitituonal questions; but whenever else resort to it is necessary to prevent a complete miscarriage of justice. . . . It would pass all fair demands upon Kulick's diligence to conclude him because of his failure to appeal.'' (P. 813.)

The United States Supreme Court reversed the *Kulick* decision in *Sunal* v. *Large* (1947) 332 U.S. 174 [67 S.Ct. 1588, 91 L.Ed. 1982], on the ground that, since the petitioner had unreasonably failed to pursue his remedies by appeal, he could not appropriately invoke habeas corpus. Justice Douglas stated for the majority, ''The case, therefore, is not one where the law was changed after the time for appeal had expired. ... It is rather a situation where at the time of the convictions *the definitive ruling on the question of law had not crystallized. Of course, if Sunal and Kulick had pursued the appellate course and failed, their cases would be quite different.* But since they chose not to pursue the remedy which they had, we do not think they should now be allowed to justify their failure by saying they deemed any appeal futile.'' (Italics added.) (P. 181 [67 S.Ct. 1588, 91 L.Ed. at p. 1988].) Thus, Justice Douglas and Judge Hand disagreed only on the significance of Kulick's failure to appeal, not on the applicability of habeas corpus to prevent a miscarriage of justice in a proper case.

The instant case presents both of the elements that Justice Douglas noted as absent in *Sunal.* The rule of instructing the jury regarding parole had ''crystallized,'' and in petitioner's automatic appeal this court followed that rule, affirming his conviction. We therefore do not reach the situation of a petitioner who seeks, in the absence of special circumstances, habeas corpus as a substitute for his remedy by appeal.

trial under the doctrine of *Morse* and *Hines*; the retrospective application of the ruling is not self defeating. In *Morse* itself we applied retrospectively a new doctrine to a fact situation and a trial that had transpired before we had reached our decision. Cases on appeal which came to us after *Morse* involved proceedings which took place prior to it. We cannot accept the paradox that would occur if defendant *Morse*, whose appeal overrules the precedent under which he was erroneously sentenced, obtains a new penalty trial, but petitioner Jackson, sentenced under the same precedent, must suffer death in a grim sequence of judicial error.[5]

Furthermore, the retrospective effect of our holding has limited application. Our ruling can only affect those defendants who, awaiting execution after the imposition of the death sentence, suffered the prejudicial error described in *Morse* and *Hines* during their own penalty trials. These are a fixed group, and none hereafter will be added to their number.[6]

---

(Compare *In re Mitchell* (1961) 56 Cal.2d 667, 671 [16 Cal.Rptr. 281, 365 P.2d 177], and *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513], which involved defendants who failed to pursue their remedies by appeal. Indeed in *Dixon*, Chief Justice Gibson recognizes that *"in the absence of special circumstances constituting an excuse* for failure to employ that remedy, the writ will not lie . . ." (Italics added, p. 759) and *Mitchell* quotes this language of *Dixon*.)

[5]See Note (1947) 60 Harv.L.Rev. 437, 447-448; In *Warring* v. *Colpoys* (D.C.Cir. 1941) 122 F.2d 642, 647 [74 App.D.C. 303, 136 A.L.R. 1025], the court held that an overruling decision of the United States Supreme Court was not applicable to an earlier case decided under the old law. (See *United States* v. *Sobell* (D.C.S.D.N.Y. 1962) 204 F.Supp. 225.) *Warring* involved the scope of a law defining criminal contempt, and under the old law the wrongful acts of bribing jurors were clearly within the court's contempt power. The *Warring* decision is criticized in Hart & Sacks, The Legal Process (1958) 631-636. The court in *Gaitan* v. *United States* (10th Cir. 1961) 295 F.2d 277, 280, denied habeas corpus to petitioners who were convicted by the use of illegally obtained evidence in proceedings that transpired prior to the decisions in *Mapp* v. *Ohio* (1961) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], and *Elkins* v. *United States* (1960) 364 U.S. 206 [80 S.Ct. 1437, 1453 [4 L.Ed.2d 1669]. (See *Collins* v. *Webb* (D.C.N.D.Cal. 1955) 133 F.Supp. 877.)

[6]The special circumstances of the present case completely differ from those in cases involving the retrospective application of the rule of *Mapp* v. *Ohio* (1961) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], as to the introduction of illegally procured evidence. (See concurring opinion of Traynor, J., in *In re Harris* (1961) 56 Cal.2d 879, 898, 899 [16 Cal.Rptr. 889, 366 P.2d 305]; Traynor, *Mapp* v. *Ohio at Large in the Fifty States*, 1962 Duke L.J. 319; *Gaitan* v. *United States* (10th Cir. 1961) 295 F.2d 277, 280.)

Nor is such retrospective application of the ruling without precedent. We stated in *In re Bell, supra,* at page 493, that "There are instances where habeas corpus affords the only method of testing constitutionality as when a statute upheld as valid at the time of conviction is *subsequently declared invalid* in another case and in the interim the petitioner either exhausts his remedy by appeal or the time for taking an appeal expires." (Emphasis added.) (See *Eskridge* v. *Washington State Board of Prison Terms & Paroles* (1958) 357 U.S. 214 [78 S.Ct. 1061, 2 L.Ed.2d 1269].) The retrospective effect of the decision which reverses a constitutional holding serves as a comparable ruling to that which we make here in another dimension.

The judicial process, once having recognized that prejudicial error occurred in defendant's penalty trial, cannot ruthlessly refuse to stay the death penalty and grant a new penalty trial upon the ground that the court discovered its error too late. We therefore grant petitioner the relief sought upon the narrow ground that habeas corpus provides review of a matter that cannot otherwise be considered, that is sufficiently important to justify this extraordinary remedy, and that involves prejudicial error in a penalty trial in which petitioner was sentenced to death.

The writ is granted as to the penalty trial of petitioner. The remittitur issued in Crim No. 7147, *People* v. *Jackson,* 59 Cal.2d 375 [29 Cal.Rptr. 505, 379 P.2d 937] is recalled and the judgment imposing the death penalty is reversed insofar as it relates to the penalty. In all other respects the judgment is affirmed. Petitioner is remanded to the custody of the Superior Court of Riverside County for a new penalty trial.

Gibson, C. J., Traynor, J., Peters, J., and Peek, J., concurred.

McCOMB, J.—I dissent from the granting of the writ of habeas corpus. The record in this case discloses the following:

This court unanimously affirmed (a) the conviction of petitioner of first degree murder and (b) the imposition of the death penalty. (*People* v. *Jackson,* 59 Cal.2d 375 [29 Cal. Rptr. 505, 379 P.2d 937].)

In that opinion Chief Justice Gibson, speaking for a unanimous court, stated, at pages 377 et seq.: "The evidence is clearly sufficient to sustain the finding of guilt, and de-

fendant makes no claim of error with respect to that issue. His contentions relate to asserted errors occuring during the penalty trial.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"It was error to instruct as to the possibility of parole without a qualification based on the practices of the Adult Authority. However, the principal consideration with respect to parole was not whether defendant might be released in seven years as distinguished from 10 or 12 years but whether in the event of a life sentence defendant would at any time become eligible for parole. In arguing to the jury defense counsel did not rely on the difference between seven years on the one hand and 10 or 12 years on the other but urged that, in view of the crimes committed, defendant would never be paroled if he were given a life sentence. Moreover, the jury was instructed that in fixing the penalty it was under a duty to consider all the evidence. *Accordingly, there is no reasonable likelihood that the instruction as to the possibility of parole without an appropriate qualification prejudiced defendant. . . .*" (Italics added.)*

Petitioner now contends that he is entitled to a writ of habeas corpus in view of the decision of this court in *People* v. *Morse, supra,* 60 Cal.2d 631. It is my opinion that he is not.

In the *Morse* case our reversal was expressly predicated on our finding that "after examination of the entire cause, including the evidence, we are of the opinion that it is reasonably probable that a result more favorable to defendant as to penalty would have been reached in the absence of the error." (60 Cal.2d at p. 653.)

As set forth above, whether an instruction on the possibility of parole, without an appropriate qualification, prejudiced defendant was the very question passed upon by a unanimous court in *People* v. *Jackson, supra,* 59 Cal.2d 375, 379 [1]. The record before us now is precisely the same rec-

---

*On March 26, 1964, two and a half months after the filing of our decision in *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33], petitioner filed in the Supreme Court of the United States a petition for writ of certiorari, contending that his criminal act was the result of an uncontrollable impulse and that therefore, even though he was legally sane under the M'Naghten rule, the imposition of the death penalty violated due process of law under the Fourteenth Amendment or the prohibition against cruel and unusual punishment of the Eighth Amendment. He again failed to raise the question he now presents. The petition was denied June 1, 1964.

ord that was before us then. Because the prior decision of this court, holding that the giving of such instruction was not prejudicial error, has become final, and because the Supreme Court of the United States has, as pointed out, recently denied a petition for writ of certiorari, I am of the view that we should not reopen the matter for further discussion.

Mr. Justice Traynor has stated the danger of reopening a matter under such circumstances as here exist, as follows: "There might well be a quarrel between the Constitution and common sense if each such change served to invite fresh attacks on final judgments. Every judgment would be vulnerable that had been affirmed on appeal under the pre-existing rule." (Traynor, *Mapp* v. *Ohio at Large in the Fifty States,* 1962 Duke L.J. 319, 341.)

Mr. Justice Traynor's view is in accord with that of the federal courts, which do not give retroactive effect to overruling decisions of the Supreme Court of the United States. (*Gaitan* v. *United States* (10th Cir. 1961) 295 F.2d 277, 280; *United States* v. *Sobell* (D.C.S.D.N.Y. 1962) 204 F. Supp. 225, 227 [1, 2]; cf. *Collins* v. *Webb* (D.C.N.D.Cal. 1955) 133 F. Supp. 877, 879 [2-4].)

Mr. Justice Douglas, speaking for the Supreme Court of the United States in *Sunal* v. *Large,* 332 U.S. 174, 181-182 [67 S.Ct. 1588, 91 L.Ed. 1982, 1988-1989], discussing a similar question, stated: "But since they chose not to pursue the remedy which they had, we do not think they should now be allowed to justify their failure by saying they deemed any appeal futile.

"We are dealing here with a problem which has radiations far beyond the present cases. The courts which tried the defendants had jurisdiction over their persons and over the offense. *They committed an error of law in excluding the defense which was tendered. That error did not go to the jurisdiction of the trial court.* Congress, moreover, has provided a regular, orderly method for correction of all such errors by granting an appeal to the Circuit Court of Appeals and by vesting us with certiorari jurisdiction. *It is not uncommon after a trial is ended and the time for appeal has passed to discover that a shift in the law or the impact of a new decision has given increased relevance to a point made at the trial but not pursued on appeal.* Cf. *Warring* v. *Colpoys, supra.* [122 F.2d 642.] If in such circumstances, *habeas corpus* could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time

as the legal climate changed. Error which was not deemed sufficiently adequate to warrant an appeal would acquire new implications. Every error is potentially reversible error; and many rulings of the trial court spell the difference between conviction and acquittal. If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by *habeas corpus,* litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court.

''An endeavor is made to magnify the error in these trials to constitutional proportions by asserting that the refusal of the proffered evidence robbed the trial of vitality by depriving defendants of their only real defense. But as much might be said of many rulings during a criminal trial. Defendants received throughout an opportunity to be heard and enjoyed all procedural guaranties granted by the Constitution. Error in ruling on the question of law did not infect the trial with lack of procedural due process. As stated by Mr. Justice Cardozo in *Escoe* v. *Zerbst,* 295 U.S. 490, 494 [55 S.Ct. 818, 79 L.Ed. 1566, 1569], 'When a hearing is allowed but there is error in conducting it or in limiting its scope, the remedy is by appeal.' '' (Italics added.)

Mr. Chief Justice Gibson, in *In re Dixon,* 41 Cal.2d 756, 759 [1] [264 P.2d 513], stated: *''The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction. (In re McInturff,* 37 Cal.2d 876, 880 [236 P.2d 574]; *In re Connor,* 16 Cal.2d 701, 705 [108 P.2d 10]; see *In re James,* 38 Cal.2d 302, 309 [240 P.2d 596]; *In re Manchester,* 33 Cal.2d 740, 742 [204 P.2d 881]; *In re Byrnes,* 26 Cal.2d 824, 827 [161 P.2d 376]; cf. *Brown* v. *Allen,* 344 U.S. 443 [73 S.Ct. 397, 420-422, 97 L.Ed. 469].) The only explanation given by petitioner for his failure to appeal is that he lost the right because of his ignorance of the law and because of a lack of funds necessary to order a transcript of the record. [Italics added.]

''. . . . . . . . . . . . . . . .

''. . . Likewise, petitioner's contentions that irrelevant

evidence was erroneously admitted at his trial and that the prosecution was guilty of misconduct clearly could have been dealt with upon a timely appeal from the judgment of conviction, and such matters are not reviewable in this proceeding. (*In re Manchester,* 33 Cal.2d 740, 743-744 [204 P.2d 881]; *In re Lindley,* 29 Cal.2d 709, 723-724 [177 P.2d 918].)'' (P. 762 [13].)

Mr. Justice Peters, in *In re Mitchell,* 56 Cal.2d 667, at page 671 [5] [16 Cal.Rptr. 281, 365 P.2d 177], said: ''It is well settled that 'habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.' (*In re Dixon,* 41 Cal.2d 756, 759 [264 P.2d 513], citing many cases.)''

I am in accord with the views expressed by Attorney General Mosk through Deputy Attorney General Albert W. Harris, Jr., during the oral argument on the matter now pending before this court.

In substance, he stated as follows: ''Apparently all persons sentenced to death in this state and now awaiting execution, other than one tried by the court, will be able to raise the same point raised here; and the Supreme Court now must determine what it is going to do in connection with its own judgments of affirmance in those cases.

''I cannot conceive of any basis for reversing those judgments which have become final, unless this court is prepared to say that these men were not given fair trials.

''You have not made the rule of the *Morse* case retroactive, and I think that if you do, there are going to be serious questions about our system of justice in this state.

''This court has declared a rule, and the people who administer justice in this state are quite prepared to follow it, but we ask as to cases which were tried before and as to cases in which there was no question of unfairness that you should not set aside those judgments, or you will come very close to shattering the confidence of the people of this state in our system of justice and your judgments. The respect you give the judgments will be the measure of the respect other courts give those judgments.

''In the present case, in arguing to the jury defense counsel urged that in view of the crimes defendant had committed, he would never be paroled if he were given a life

sentence, and the jury was instructed that in fixing the penalty, it was under a duty to consider all the evidence. Under the circumstances, there is no reasonable likelihood that the instruction as to the possibility of parole, without an appropriate qualification, prejudiced defendant. Defendant is subject to the death penalty, because the jury fixed it, and he had a fair trial. If those conditions are present, and the court had jurisdiction, this court has always said, 'We will not inquire any further into it.' This defendant had a fair trial. He was sentenced to death, and if there is some element of injustice, the Governor sits to take care of matters of that kind. If this court grants relief through the vehicle of habeas corpus, I see no end of litigation in death cases.''

An examination of the entire record in this case convinces me that there was no prejudicial error. Therefore, under article VI, section 4½, of the Constitution, the petition should be denied. (Cf. concurring and dissenting opinions by Schauer, J., and myself in *People* v. *Hines, ante,* pp. 164, 175 et seq. [37 Cal.Rptr. 622, 390 P.2d 398].)

Schauer, J., concurred.

Respondent's petition for a rehearing was denied August 5, 1964. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.