[Crim. No. 7490. In Bank. Apr. 29, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH RO-SOTO, JOHN FRANK VLAHOVICH and DONALD GLEN FRANKLIN, Defendants and Appellants.

[Crim. No. 8160. In Bank. Apr. 29, 1965.]

In re JOSEPH ROSOTO, JOHN FRANK VLAHOVICH and DONALD GLEN FRANKLIN, on Habeas Corpus.

(Consolidated Cases)

---

Belli, Ashe & Gerry, Melvin M. Belli, Seymour L. Ellison, Rice, Rice & Cohen, Samuel K. Rice, Paul M. Posner, Margolis & McTernan, David B. Finkel, Paul Caruso and Thomas L. Murrin for Defendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Albert W. Harris, Jr., and Gordon Ringer, Deputy Attorneys General, for Plaintiff and Respondent.

PEEK, J.—Joseph Rosoto was convicted of murder in the first degree of one Leslie Simpson, conspiracy to commit burglary and robbery, burglary, two counts of kidnaping with intent to commit robbery, perjury, and conspiracy to obstruct and pervert justice. John Frank Vlahovich, a codefendant, was convicted of the murder of Simpson, perjury, and conspiracy to obstruct justice. Donald Glen Franklin, also a codefendant, was convicted of Simpson's murder and conspiracy to obstruct justice. The jury fixed the penalty at death as to all defendants, and this court affirmed the judgments. (*People* v. *Rosoto,* 58 Cal.2d 304 [23 Cal.Rptr. 779, 373 P.2d 867].)

By petition for writ of *coram nobis* or other appropriate relief, defendants seek to set aside the judgments of conviction of murder, claiming that a key prosecution witness perjured himself at trial and that the prosecuting authorities were aware of the perjured testimony. By petition for writ of habeas corpus they seek reversal of the judgments as to penalty on the basis that errors occurred of the type condemned in *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]. This court ordered a reference as to the alleged perjured testimony, and the referee's findings were against the defendants as to all issues relating to those allegations. Since the referee's conclusions appear to be correct, we deny the request for relief from the judgments of conviction for murder. The judgments as to penalty must be reversed, however, since the argument and instructions to the jury were prejudicially erroneous according to the rule of *People* v. *Morse, supra,* 60 Cal.2d 631, and cases following.

In March 1957 a bar in Anaheim was robbed by armed men. Defendant Joseph Rosoto and his half-brother Michael Rosoto were involved in the robbery. On February 7, 1959, the owner of the bar, Leslie Simpson, who had observed the bandits and was to be a witness at the forthcoming trial of Joseph Rosoto for that offense, was shot and killed early one morning as he returned home from his bar. Simpson's wife, also a witness to the robbery, was seriously wounded and permanently injured.

Michael Rosoto (hereafter Michael) was the principal witness for the prosecution at defendants' trial for Simpson's murder. He testified to admissions by all defendants made at various times which placed responsibility upon them for Simpson's death. Michael's testimony and additional evidence corroborating defendants' guilt is set forth in detail in *People* v. *Rosoto, supra,* 58 Cal.2d 304.

Defendants point to the fact that Michael was under indictment for numerous robberies at the time he testified against them, and they suggest that he testified falsely at the direction of and with the knowledge of the prosecuting authorities in order to bring about their convictions and thus lighten or escape punishment for his own misdeeds.

As the basis for relief in the instant petition for writ of *coram nobis*, defendants submit the transcript of a tape-recorded telephone conversation between Michael and his half-sister Della Rosoto Kline (defendant Rosoto's sister), wherein Michael contradicts in certain respects his trial testimony as to defendants' admissions of guilt.

Following the People's request for a reference in order that the disputed issues of fact be resolved, this court directed that evidence be taken responsive to the following questions: "(1) Did Michael Rosoto commit perjury at the trial of petitioners? (2) If so, how long have petitioners or their representatives known of such perjury? (3) If Michael Rosoto committed perjury, did any representatives of the State of California cause or suffer such testimony to be introduced, knowing such testimony as given was perjured? (4) What, if any, new evidence has been discovered that undermines the case presented by the prosecution at the trial?"

After extensive hearings, the referee found that Michael did not commit perjury at defendants' trial. The referee stated that Michael gave substantially the same testimony he gave at the trial, and that his trial testimony "was not convincingly impeached" at the reference hearing. It was also found, contrary to defendants' allegations, that the convictions were not based entirely upon Michael's testimony, since there "was substantial corroborative evidence of their guilt." As to the tape recording of Michael's conversation with Della Rosoto Kline, the findings state that it (as well as a corresponding affidavit) was "part of a calculated effort to reverse the results of the petitioners' trial through corrupt means."

In support of that conclusion the referee points out that the affidavit and the conversation which was recorded "were carefully rehearsed to provide Della with spurious admissions of perjury." Michael, it was found, was at the time unemployed and thus falsely admitted perjury partly for money and partly because he "'felt guilty' because Joseph was going to die as a result of his truthful testimony and because he had helped trap him." The referee also found that Della

threatened Michael on numerous occasions.

As to the issue of how long defendants or their representatives knew of Michael's alleged perjury, the referee found that defendants' attorneys were in possession of the evidence of the alleged perjury since March 6, 1961. He detailed the history of the appellate proceedings in this court, the applications for post-conviction relief in the federal courts, and the clemency hearing before the Governor, during which proceedings the instant evidence was not formally presented. From the fact that Michael's recantation of his trial testimony was not set before a judicial body until May 3, 1963, shortly before the scheduled execution of two of the defendants, the referee concludes: "As a matter of strategy, petitioners, through their attorneys, deliberately chose to gamble their lives to a point within several hours of the time set for their execution, by withholding from any court the charges herein presented of perjury, and of perjury knowingly being used by law enforcement officials in obtaining their conviction."

Defendants state that the tape recording and affidavit were withheld in an attempt to corroborate those items with further evidence, but the explanations do not appear convincing in view of the long delay wherein no other competent or persuasive evidence was produced by way of corroboration. Thus the very delay in presenting the evidence as well as the manner and time of its presentation further undercuts defendants' allegations as to Michael's perjury and lends additional support to the referee's adverse findings.

The third issue submitted to the referee, whether representatives of the State of California caused or suffered perjured testimony by Michael to be introduced, is necessarily answered in the negative by this court's adoption of the referee's findings that Michael did not perjure himself at trial. The referee additionally found, on the basis of testimony of investigating personnel, that such representatives of the state "at all times in question believed the trial testimony of Michael to be true," since most of his testimony was corroborated by other evidence (see *People* v. *Rosoto, supra,* 58 Cal.2d 304, 323, 324). It was also found that representatives of the People did not coerce Michael into testifying as he did at the trial. As to the fourth issue the referee found that "no material new evidence has been discovered that undermines the case presented by the prosecution at the trial."

■ Thus, although this court it not required to adopt the findings of a referee (see *In re Mooney,* 10 Cal.2d 1, 17 [73

P.2d 554]), they are entitled to great weight. (*In re Riddle,* 57 Cal.2d 848, 853 [22 Cal.Rptr. 472, 372 P.2d 304].)

 Because of the inherent weight of the findings and since defendants have not seriously challenged them,[1] the referee's conclusions are adopted. Accordingly we hold that no new evidence has been presented which may be allowed to impeach the judgments convicting defendants of the murder of Leslie Simpson.

 In the course of arguments to the jury concerning the penalty to be imposed upon defendants, the district attorney argued that sentence of death or life imprisonment can be reduced by the Governor, and that a prisoner serving a life sentence for murder is eligible for parole after seven years. The prosecutor asked the jury: ''Can you afford to take that chance, to run that risk? I think that is a factor that you ought to consider.'' The trial court also instructed the jury as to the possibilities of pardon or reduction of sentence by the Governor, and parole after seven years of an inmate serving a life term for murder.

In *People* v. *Morse, supra,* 60 Cal.2d 631, we held that such matters should not be submitted to a jury asked to determine whether a defendant convicted of a capital offense should receive a life sentence or the penalty of death, since considerations of parole tend to invite that body to impose the stronger and irrevocable penalty in order to prevent the Adult Authority or the Governor from mistakenly allowing convicted murderers their freedom while they yet remain a danger to society. (*People* v. *Treloar,* 61 Cal.2d 544, 549-550 [39 Cal.Rptr. 386, 393 P.2d 698].) *In re Jackson,* 61 Cal.2d 500, 503-505 [39 Cal.Rptr. 220, 393 P.2d 420], held that such questions may be reached by habeas corpus in cases, as herein, which were tried prior to our decision in the *Morse* case. **[4]** Notwithstanding the state of the record as to guilt and penalty, the presence of such argument and instructions requires reversal. (*People* v. *Hines,* 61 Cal.2d 164, 168-170 [37 Cal.Rptr. 622, 390 P.2d 398].)

The petition for writ of *coram nobis* is denied. The writ of habeas corpus is granted; the remittitur issued in Crim. No. 6862, *People* v. *Rosoto,* 58 Cal.2d 304 [23 Cal.Rptr. 779, 373

---

[1]Petitioners were granted an extension of time within which to file objections to the referee's report and findings. They filed no objections, but chose instead to file the instant petition for writ of habeas corpus, attacking only the judgments insofar as they imposed the death penalty, on the basis of *People* v. *Morse, supra,* 60 Cal.2d 631.

P.2d 867], is recalled and the judgments reversed insofar as they relate to the death penalties imposed. In all other respects the judgments are affirmed. Petitioners are remanded to the custody of the Superior Court of Orange County for a new penalty trial.

Traynor, C. J., Peters, J., Tobriner, J., and Dooling, J.,* concurred.

SCHAUER, J.*, Concurring and Dissenting.—In concur in affirmance of the judgments of conviction, but the reversal of the penalty judgments appears to me to (1) exceed the granted jurisdiction of this court and (2) transgress the limitation upon the court's exercise of such jurisdiction as is granted. I am therefore compelled to dissent from the reversal of such penalty judgments.

California's Constitution (art. VI, §§ 4 and 4½)—the sole source of the court's relevant power—specifies both the power granted and the unequivocal delimitation upon its exercise as follows: "Sec. 4. The Supreme Court shall have appellate jurisdiction ... on questions of law alone, in all criminal cases where judgment of death has been rendered; ... The said court shall also have power to issue writs of ... habeas corpus, ..."

"Sec. 4½. No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

*People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33], relied on by the majority, does not support reversal in the case at bench; it does not hold that the subject sections of the Constitution were beyond the power of the people of California to adopt for the very purpose of forbidding this court to reverse death penalty judgments on technical reasons; neither does *Morse* or any other decision of which I am aware hold that obedience to sections 4 and 4½ of California's Constitution would violate any federally protected right of these defendants.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

In *Morse* the court, at least inferentially, recognized that it could *not* reverse the judgment imposing the death penalty unless it found, ''after an examination of the entire cause, including the evidence,...that the error complained of... resulted in a miscarriage of justice.'' In the cited case (*Morse* at pp. 652-653) the court, obviously in recognition of, and deference to, the constitutional mandate, delineated at length the errors found and the totality of the circumstances wherein those errors were intermeshed. It was only as illumined and activated by those circumstances that a basis constitutionally permitting reversal of the judgment was found. And it was only upon such particularized recitals and the inferences it deemed warrantable that the court said (60 Cal.2d at p. 652) : ''We have no doubt that these errors in directing the attention of the jury to the roles of Adult Authority, judge, and Governor, by means of argument, evidence and instruction in the instant case, prejudicially influenced the jury. Moreover, after deliberating for one day, the jury specifically asked 'to hear again the court's instructions re the third phase, in clarification of reference to possible consequences.' The court then reread the above-mentioned instruction. The jury then asked additional questions relating to the alternative death or life sentences. Thus the jury, while deliberating upon the death penalty, was aware of, and had repeated to it, the facts concerning the roles of the Adult Authority, the trial judge and the Governor. Furthermore, the trial court affirmatively instructed the jury that it could consider these facts. Whatever the reasons this court might have found in the record in *Linden* 'to avoid an otherwise indicated reversal,' we find in the record here no justification for concluding that the error was not prejudicial insofar as concerns the fixing of penalty. To the contrary, after examination of the entire cause, including the evidence, we are of the opinion that it is reasonably probable that a result more favorable to defendant as to penalty would have been reached in the absence of the error.''

By contrast with the above quoted holding, the majority do *not* find on the record now before us ''that it is reasonably probable that a result more favorable to defendant as to penalty would have been reached in the absence of the error.'' Neither do they declare that they are of the opinion that any error or errors, or the judgments of the trial court (or any of them), constitute or evidence or result in or from ''a miscarriage of justice.'' (See *People* v. *Watson* (1956) 46 Cal.2d 818, 835-838 [12, 13] [299 P.2d 243].) I cannot construe

*People.* v. *Hines* (1964) 61 Cal.2d 164 [37 Cal.Rptr. 622, 390 P.2d 398], cited by the majority, as efficacious either to limit the reach of article VI, section 4½, of the California Constitution, or as authorizing this court to read an exception into the clear language which the people wrote into the Constitution.

On the record now here, after examination of the entire cause including the evidence, and assuming any and all errors declared by the majority, I am of the opinion that the judgments rendered by the trial court are amply supported; that no finding of a miscarriage of justice is tenable; that the petition for habeas corpus should be denied; and that the judgments as rendered should be allowed to stand. Thus could justice for the people of this state, as ordained by them —although grievously delayed—be vindicated.

McCOMB, J.—I concur in the affirmance of the judgments of conviction and I would also affirm the judgments as to the death penalty.